IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

RAMON GARZA NINO, et al.,

        Plaintiff,

        v.

UNION PACIFIC CORPORATION, a Utah
corporation; and UNION PACIFIC
RAILROAD COMPANY, a Delaware
corporation,

        Defendants.

Case No. 3:25-cv-1078-MC

OPINION AND ORDER

MCSHANE, Judge:

Defendants Union Pacific Corporation and Union Pacific Railroad Company move to sever this action involving damage from two fires purportedly started from two of Defendants' trains. Because the two fires—separated not only by several weeks, but also by 100 miles—do not arise out of the same occurrence or series of occurrences, Defendants' motion, ECF No. 36, is **GRANTED**.

1 – Opinion and Order

## **BACKGROUND**[1]

Plaintiff's original Complaint arose "from the Rowena Fire, a catastrophic wildfire that ignited at approximately 1:30 PM on June 11, 2025, in Wasco County, Oregon." Compl. ¶ 1; ECF No. 1. The Rowena Fire stemmed from "superheated particles" emitted from a Union Pacific train on tracks near milepost 76.05, approximately three miles from The Dalles, Oregon. Compl. ¶ 3. The resulting fire burned nearly 3,600 acres and displaced over 1,500 residents. Compl. ¶ 4. Plaintiffs were a married couple who suffered damages to personal and real property in the blaze. Compl. ¶¶ 8–9. Plaintiffs allege that Defendants knew that due to high winds and hot, dry conditions, the Columbia River Gorge was particularly susceptible to wildfires. Compl. ¶ 14. Plaintiffs provide examples of four other fires in the same general vicinity over the past decade or so. Plaintiffs allege that one of those fires, on the other side of the Columbia River Gorge, was caused by a train operated by a different railroad company. Compl. ¶ 15.

Three months later, the original Plaintiffs filed a Second Amended Complaint. Second Am. Complaint (SAC); ECF No. 34. The SAC included approximately 40 or so additional Plaintiffs seeking damages from not only the Rowena Fire, but the Cold Spring Fire. SAC ¶ 1. Plaintiffs allege that the two fires occurred "just over 100 miles and just 3 weeks apart" from each other "as a result of the same pattern and sequence of events." SAC ¶ 1. "Following the same disturbing pattern, both fires ignited during dangerous fire conditions along the same Tracks within days of one another." SAC ¶ 2. Plaintiffs allege that the Cold Springs Fire, like the Rowena Fire, started when "superheated particles" from Defendants' train ignited dry vegetation about seven miles from Hermiston, Oregon. SAC ¶ 4. The Cold Springs Fire burned 2,400 acres and displaced "numerous residents." SAC ¶ 4.

---

[1] At the motion to dismiss stage, this Court takes all of Defendant's allegations as true. *See Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

The Rowena Plaintiffs include approximately 40 Plaintiffs. SAC ¶ 9. The Cold Springs Plaintiffs consist of four Plaintiffs (Heidi, Brady, and Brian Lloyd, along with Patricia Edmunds). SAC ¶ 10. In moving to sever, Defendants argue:

> The Cold Springs and Rowena Fires were separate occurrences: they happened 100 miles and three weeks apart in separate counties and were allegedly ignited by different Union Pacific trains operating on different track subdivisions. The fires also implicate separate issues of fact and law: each will require distinct causation inquiries, different eyewitnesses and experts, different equipment and inspection records, and separate analyses of standards of care and mental state. Joinder will thus cause multiple trials within a trial, confusing the jury and prejudicing Union Pacific.

Mot. Sever, 6.

The Court agrees.

## LEGAL STANDARD

A court may, at any time, add or drop any party or sever any claim against a party. Fed. R. Civ. P. 21. Different plaintiffs may join one action if their claims arise out of the same occurrence or series of occurrences and there exist common questions of law or fact. Fed. R. Civ. P. 20(a)(1); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). "If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Coughlin*, 130 F.3d at 1350.

## DISCUSSION

No court would conclude that a traffic accident in Portland, Oregon involving an Amazon Prime delivery truck arose out of the same occurrence or series of occurrences as another crash one month later in Eugene, Oregon, involving a different Amazon Prime delivery truck. This is so even if, say, Plaintiffs alleged that both crashes resulted from unsafe headlights and Amazon's failure to properly train delivery drivers to drive at dusk. Yet that is essentially what the Plaintiffs ask here; i.e., for the Court to find that separate fires, 100 miles apart, allegedly caused by two

3 – Opinion and Order

different trains operated by Defendants are part of the same series of occurrences.

Plaintiffs mainly rely on *Longoria v. Kodiak Concepts LLC*, 2020 WL 1509353 (D. Az. 2020). The facts in *Longoria*, however, are not remotely analogous to the facts alleged here. *Longoria* involved claims of several dancers who alleged their employer, a "Gentlemen's Club," unlawfully posted images of Plaintiffs on Defendant's social media pages. In rejecting the club's motion to sever, the court noted that although the club posted different pictures on different days, it used the pictures in the same way and manner (posting the images) and for the same purpose (to promote the club). Here, although Plaintiffs allege that Defendants chose to operate the trains during a dry period with high winds, there are questions regarding what caused the fires in the first place and if each fire was due to Defendants' failure to maintain vegetation along the tracks, failure to maintain its trains, or whether Defendants' decision to lay off workers at its Hermiston yard contributed to the blazes.

Plaintiffs allege that the Nation Weather Service issued a "red flag warning" that was in place during the Rowena Fire. SAC ¶ 23. There appears to be no such warning in place during the Cold Spring Fire. The Rowena Fire had winds with 40 mile per hour gusts. SAC ¶ 26. The Cold Springs Fire generally had gusts of 20-30 miles per hour. SAC ¶ 30. Plaintiffs allege that the Cold Springs Fire was "exacerbated by the reduction in operations" at Defendants' Hermiston yard. SAC ¶ 27. As far at the Court can tell, the personnel reductions in Hermiston played no part in the Rowena Fire. Witnesses reported seeing sparks shooting 20 feet from train shortly before the Cold Springs Fire. SAC ¶ 29. In contrast, the SAC is silent regarding how far sparks flew from the train that caused the Rowena Fire.[2] Additionally, Plaintiffs allege that the train that caused the Rowena Fire continued to operate despite the fact that it "sparked an initial wildfire." SAC ¶ 25. In short,

---

[2] How far sparks flew from the trains, and how close vegetation was to the tracks, are questions of fact regarding the negligence, if any, of each train.

there are clear factual questions between the causes of the two fires at issue here that distinguish this case from one where a Gentleman's Club opts to post pictures of its employees (on different days) to different social media accounts with the same underlying purpose of promoting the club.

More significantly, allowing Plaintiffs to join the two fires here risks unduly prejudicing Defendants. Prior to the Rowena Fire, there are no allegations of any fire, ever, caused by any train operated by Defendants. This fact arguably creates different questions regarding what Defendants knew or should have known at the time of the Rowena Fire versus Defendants' knowledge at the time of the Cold Springs Fire. Plaintiffs essentially establish this prejudice with their allegations in support of their IIED claim. For example, Plaintiffs allege that "Defendants demonstrated further indifference by continuing operations after the Rowena Fire, igniting another series of dangerous wildfires on July 2, 2025 in the Cold Springs area. SAC ¶ 126.b; *see* SAC ¶ 127.b (alleging that "Defendants witnessed the immediate panic and terror of over 1,500 residents forced to evacuate their homes as fires spread. Nonetheless, they continued operating Trains that were shooting sparts [sic] through July 2, 2025, displacing additional Plaintiffs and destroying Plaintiffs' property.").

Other than the fact that Defendants happen to operate trains in a dry, windy area, there are no allegations demonstrating the two fires at issue were part of the same series of occurrences. Joinder of Plaintiffs from the two separate fires, allegedly caused by two different trains operating several weeks apart and separated by 100 miles, is not permissible. This is not to say that there will not be some overlapping discovery or, in some instances, overlapping evidence. Admissibility issues will be determined by the Court at a later time.

Plaintiffs shall file a separate action with allegations relevant to the Plaintiffs impacted by the Cold Springs Fire. Once filed, that action will be assigned to this Court. Additionally, Plaintiffs

5 – Opinion and Order

impacted by the Rowena Fire are granted leave to file a Third Amended Complaint within 30 days.

## **CONCLUSION**

Defendants' Motion to Sever, ECF No. 36, is GRANTED.


IT IS SO ORDERED.

DATED this 30th day of June 2026.

s/Michael J. McShane

Michael McShane
United States District Judge
